BEFORE THE UNITED STATES
JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

IN RE: LENS.COM MARKETING AND SALES            MDL DOCKET NO. 3151
PRACTICES LITIGATION

**PLAINTIFF RICKEY MARTIN'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO TRANSFER OF ACTIONS TO THE DISTRICT OF NEVADA PURSUANT TO 28 U.S.C. § 1407 FOR COORDINATED OR CONSOLIDATED PRETRIAL PROCEEDINGS**

Rickey Martin is a Plaintiff in the following two actions pending against Lens.com: *Martin v. Lens.com, Inc.*, No. 0:24-cv-60489-DSL (S.D. Fla.) and *Martin v. Lens.com, Inc.*, No. 2:24-cv-2160-RFB-BNW (D. Nev.). Martin submits this *Response in Opposition to Defendant's Motion to Transfer of Actions to the District of Nevada*, and in support thereof, states as follows:

## INTRODUCTION

As explained by Lens.com, there were five class action lawsuits filed against it. Four of those actions have already been transferred to the District of Nevada (with one nuance being that only part of the *Martin* action, discussed herein, was transferred). Shortly after Lens.com filed its motion for coordinated or consolidated pretrial proceedings before this court, the District of Nevada ordered that the four cases pending before it be consolidated before United States District Judge Jennifer Dorsey for discovery purposes. *See Martin v. Lens.com, Inc.*, No. 2:24-cv-02160-RFB-BNW (ECF No. 66). Thus, what Lens.com is requesting of this Panel has largely been addressed by the District of Nevada.

*Gonneville v. Lens.com* and this case, *Martin v. Lens.com*, are the two outliers; yet, neither case justifies consolidation before the Panel. *Gonneville* was filed in the District of Massachusetts. As it did in the other four class actions, Lens.com moved to transfer the *Gonneville* action to the District of Nevada. That Motion is still being considered by the District of Massachusetts. Thus,

1

it is very possible that the *Gonneville* action will join the other four in the District of Nevada and be consolidated there for discovery purposes.

*Martin v. Lens.com* is pending in both the District of Nevada and the Southern District of Florida. The Southern District of Florida transferred Martin's breach of contract and unjust enrichment claims to the District of Nevada (where they are currently consolidated) but retained Martin's claim under the Florida Deceptive and Unfair Trade Practices Act. It determined that the State of Florida has a unique interest in the FDUTPA claim.

In sum, *Gonneville* may very likely be transferred to the District of Nevada and consolidated with the four other cases and only the state-specific claim in *Martin* remains in the Southern District of Florida. In situations such as this, where a minimal number of actions are involved, the movant bears a heavy burden to demonstrate that centralization is appropriate. Lens.com has not met that burden. Instead, the efficiencies Lens.com desires are already being achieved through the consolidation of four cases in the District of Nevada and can be further accomplished through informal coordination, especially considering that the majority of plaintiffs' counsel have been working together from the beginning of these cases. Specifically, counsel in the three state-specific class actions (*Fitzpatrick*, *Nail*, and *Martin*), which were filed before either of the nationwide class actions, have been and intend to continue working together until the conclusion of their respective cases.

## FACTUAL BACKGROUND

On February 21, 2024, Plaintiff Rickey Martin filed a class action lawsuit against Lens.com seeking to represent a class of Florida consumers who he alleges were misled into paying a fee that they do not owe and that was not what it purported to be. *See* Complaint at ¶ 4, *Rickey Martin v. Lens.com, Inc.*, No. 0:24-cv-60489-LEIBOWITZ (S.D. Fla. Mar. 27, 2024), ECF No. 1-1. More

specifically, Lens.com allegedly charged customers "Taxes & Fees" despite the fact that the State of Florida exempts prescription contact lenses form its sales tax.

Martin filed his case in the Circuit Court of Broward County, Florida. Martin's case was later removed to the Southern District of Florida. Following extensive briefing on Lens.com's Motion to Transfer, the Southern District of Florida ordered that Martin's claims for breach of contract and unjust enrichment be transferred to the District of Nevada but that Plaintiff's FDUTPA claim remain in the Southern District of Florida. *See* Order, *Martin*, No. 0:24-cv-60489-LEIBOWITZ, ECF No. 50.

The court found that "the FDUPTA claim is an independent statutory claim completely severable, distinct, and independent of any claims arising from a contract." *Id.* at p. 15. It held that Martin's "statutory tort claim need not, and the Florida legislature and Florida courts have declared should not, travel in lockstep with his contract or quasi-contract law claims." *Id.* It also emphasized the "unique interest" that the State of Florida has "in adjudicating Plaintiff's FDUTPA class claim," especially considering that Plaintiff's FDUTPA claims arise from Defendant allegedly charging "Taxes & Fees" on products that are tax-exempt under Florida law. *Id.* at p. 16 ("But in the Sunshine State, corrective contact lenses are exempt from sales tax as a matter of public policy declared by her elected representatives."). The Southern District of Florida denied Defendant's Motion for Reconsideration. Order, *Martin*, No. 0:24-cv-60489-LEIBOWITZ, ECF No. 64.

## ARGUMENT

**I.     Lens.com Has Not Met Its Heavy Burden to Justify Transfer.**

Section 1407 allows for the transfer of common questions of fact for coordinated or consolidated pretrial proceedings where such transfer "will be for the convenience of parties and

3

witnesses and will promote the just and efficient conduct of such actions." 28 U.S.C.A. § 1407(a). "[T]hose advocating transfer bear a heavy burden of persuasion when there are only a few actions, particularly those involving the same parties and counsel." ANNOTATED MANUAL FOR COMPLEX LITIGATION § 20.131 (4th ed.) (citing *In re Scotch Whiskey*, 299 F. Supp. 543 (J.P.M.L. 1969)); *see In re Covidien Hernia Mesh Prods. Liab. Litig.*, 481 F. Supp. 3d 1348 (J.P.M.L. 2020) ("But where, as here, 'only a minimal number of actions are involved, the proponent of centralization bears a heavier burden to demonstrate that centralization is appropriate.'") (quoting *In re Hyundai and Kia GDI Engine Mktg., Sales Practices, & Prods. Liab. Litig.*, 412 F. Supp. 3d 1341, 1343 (J.P.M.L. 2019)).

In *Scotch Whiskey*, the Panel looked to the legislative history of § 1407 as "a guide for determining under what conditions litigation involving a minimum number of cases is appropriate for consolidation":

> If only one question of fact is common to two or three cases pending in different districts there probably will be no order for transfer, since it is doubtful the transfer would enhance the convenience of parties and witnesses or promote judicial efficiency. It is possible, however, that a few exceptional cases may share unusually complex questions of fact * * * (and that) substantial benefit may accrue to courts and litigants through consolidated or coordinated pretrial proceedings. (Senate Report 454 to accompany S. 159, pages 4-5), U.S.Code Cong. & Admin.News 1968, p. 1901.

299 F. Supp. at 544.

More recent cases are in accord. For example, in *In re: Air Crash At Las Vegas, Nevada, On Aug. 28, 2008*, 716 F. Supp. 2d 1366, 1367 (J.P.M.L. 2010), the Panel considered whether § 1407 centralization was appropriate when only two actions had been filed. While it recognized that "both actions share factual questions relating to the cause or causes of a crash of a Piper Navajo aircraft in Las Vegas, Nevada," it found compelling that "only a minimal number of actions and

4

parties are involved in this docket" and held that the movant failed to show "that any common questions of fact are sufficiently complex and/or numerous to justify Section 1407 transfer." *Id.*

Similarly, in *In re Nelnet Servicing, LLC*, 648 F. Supp. 3d 1377 (J.P.M.L. 2022), the Panel declined to centralize twenty-two cases where twenty-one of those actions had already been consolidated in the District of Nebraska. It noted that even if the single outlier was "not transferred to the District of Nebraska through Section 1404, informal coordination and cooperation among the involved parties and courts appear[s] quite feasible." *Id.* at 1378.

Lens.com asks the Panel to consolidate cases that are, like those in *Nelnet*, largely already consolidated – the only exceptions being one case that may still be transferred to and consolidated in Nevada and one single Florida claim pending in the Southern District of Florida. Because there are so few cases pending against it, Lens.com bears a heavier burden. Lens.com has not met that burden to show that the cases against it fall within the category of those rare "exceptional cases" sharing "unusually complex questions of fact." *See* 299 F. Supp. at 544. In an attempt to show "common questions of fact," Lens.com generalizes the cases filed against it without considering their differences.[1] For example, *Martin* is different from the others because Martin alleges he was charged "Taxes & Fees" by Lens.com for contact lens sales despite the fact that contact lenses are tax-exempt in the State of Florida. It was Florida's public policy in this respect that persuaded the Southern District of Florida to retain Martin's FDUTPA claim. Order at pp 14-16, *Martin*, No. 0:24-cv-60489-LEIBOWITZ, ECF No. 50.

---

[1] Lens.com cites *In re Capital One 360 Sav. Acct. Int. Fee Litig.*, 737 F. Supp. 3d 1359 (J.P.M.L. 2024) as being "instructive." That case, however, involved an **unopposed** motion for centralization as well as seven actions pending in six districts.

**II.     In Addition to Consolidation of the Majority of Cases in the District of Nevada, Informal Cooperation and Coordination Can Also Be Achieved by Counsel and the Courts Working Together.**

Centralization under § 1407 is generally considered a last resort: "We repeatedly have emphasized that 'centralization under Section 1407 should be the last solution after considered review of all other options.'" *In re Bank of Am. Fraudulent Acct. Litig.*, 707 F. Supp. 3d 1415, 1416 (J.P.M.L. 2023). Among those options is § 1404 transfer and "cooperation among the parties and the various transferor courts." *Id.* In fact, § 1404 transfer is preferable to "eliminate the multidistrict character of a litigation." *Id.* In *Bank of Am. Fraudulent Acct. Litig.*, the Panel denied centralization where four of six actions were pending in the Western District of North Carolina and the defendant stated its intent to file a § 1404 motion seeking to transfer the other two actions to North Carolina. The court noted that even "if consolidation cannot be accomplished under Section 1404, informal coordination among the small number of parties and involved courts in this litigation seems eminently feasible." *Id.*

Similarly, the "presence of common counsel here should facilitate informal coordination of this relatively small number of actions." *In re Covidien Hernia Mesh Prods. Liab. Litig.*, 481 F. Supp. 3d 1348, 1349 (J.P.M.L. 2020) (denying centralization where plaintiffs in five of twelve actions were represented by the same law firms, plaintiffs in another two actions shared counsel, and defendants were represented by the same law firm in nine of the actions); *see also In re Nat'l Rifle Ass'n Bus. Expenditures Litig.*, 521 F. Supp. 3d 1353, 1354-55 (J.P.M.L. 2021) (noting that informal coordination is facilitated where the parties in different actions are represented by common counsel). From the start, Counsel for Martin have been working together with plaintiff's counsel in *Fitzpatrick* and *Nail* to jointly litigate their cases. *See* Opposition to Motion to Transfer

6

& Declaration of Joshua T. Le, *Martin v. Lens.com, Inc.*, No. 2:24-cv-02160-RFB-BNW (ECF No. 23, 23-3).

Yet, Lens.com seems to suggest that informal coordination is somehow impossible in this case, raising concerns about conflicting rulings and duplicative discovery. Oddly enough, however, one of the cases it cites highlights why centralization is inappropriate here and indicates that Lens.com's Motion is premature. In *In re Baby Food Mktg., Sales Pracs. & Prods. Liab. Litig. (No. II)*, 730 F. Supp. 3d 1371 (J.P.M.L. 2024), the Panel granted a motion for centralization of products liability actions against baby food manufacturers, distributors, and others after previously denying a motion to centralizing economic loss class actions involving similar baby food claims. In explaining its reasoning, the Panel highlighted stark differences between the two:

> We previously denied a motion to centralize numerous economic loss class actions involving similar claims relating to baby foods. *See In re Baby Food Mktg., Sales Pracs. & Prods. Liab. Litig.*, 544 F. Supp. 3d 1375 (J.P.M.L. 2021). Most of the actions on that motion, however, named only a single defendant and, critically, most were filed in or had been transferred via Section 1404 to the district where that defendant was headquartered. *Id.* at 1377–78 ("We believe it is better to allow the parties' attempts to self-organize play out before centralizing any part of this litigation."). Here, in contrast, the actions on the motion all present personal injury claims, and all but one is brought against multiple manufacturers. And there are now 25 related actions pending in eleven districts involving multiple different plaintiffs' counsel. In these circumstances, we are not convinced that alternatives to centralization—such as informal cooperation between the parties and coordination among the involved courts—are preferable to centralization.

*Id.* at 1373.

The actions against Lens.com are more akin to those where the motion to centralize was denied as the majority have "been transferred via Section 1404 to the district where [Lens.com] was headquartered." *See id.* As recognized by the Panel in the first *Baby Food* litigation, "it is better to allow the parties' attempts to self-organize play out before centralizing any part of this litigation." 544 F. Supp. 3d at 1378. "If the actions against a particular defendant are not

7

consolidated in a single district, *and* if alternative means of informal coordination and cooperation are ineffective with respect to any actions that remain outside the defendants' home district, the parties at that time may pursue a more focused request for centralization." *Id.*

In other words, Lens.com's Motion is premature. Lens.com filed its Motion for Transfer here without even waiting for an order from the District of Nevada on its Motion for Consolidation. The District of Nevada has since consolidated the majority of the cases pending against Lens.com, and it is still possible that *Gonneville* may be transferred and consolidated as well, leaving only Martin's FDUTPA claim to be decided elsewhere. Lens.com cites no authority for the premise that "differing courts" cannot coordinate discovery and pre-trial motions. In fact, the *Manual for Complex Litigation* has numerous sections offering courts options for informal coordination. *See, e.g.*, ANNOTATED MANUAL FOR COMPLEX LITIGATION § 20.14. As is common practice, class definitions can easily be modified and subclasses may be created to avoid a double recovery. *See, e.g., id.* at § 20.14 ("Conflicts between class actions, or between a class action and individual actions, can be avoided by coordinating the drafting of class definitions when actions are certified."); *see also* 3 NEWBERG AND RUBENSTEIN ON CLASS ACTIONS § 7:30 (6th ed.) ("Courts will generally consider subclassing when the need arises."). Thus, Lens.com has failed to demonstrate that centralization is appropriate or necessary to promote the just and efficient conduct of the few actions filed against it.

## **CONCLUSION**

Because Lens.com has not met its heavy burden to show that centralization is appropriate under § 1407, its *Motion for Transfer of Actions* should be denied in its entirety.

Respectfully submitted,

/s/ J. Matthew Stephens
J. Matthew Stephens
Robert G. Methvin, Jr.
Courtney C. Gipson
**Methvin, Terrell, Yancey, Stephens & Miller, P.C.**
2201 Arlington Avenue South
Birmingham, Alabama 35205
Telephone:  (205) 939-0199
Facsimile:  (205) 939-0399
mstephens@mtattorneys.com
rgm@mtattorneys.com
cgipson@mtattorneys.com

Josh Migdal
**Mark Migdal & Hayden**
Brickell City Tower
80 SW 8th St.
Suite 1999
Miami, FL 33130
O: 305-374-0440 / D: 305-374-6623
josh@markmigdal.com

Matthew Herman, Esq.
**Meyers & Flowers, LLC**
3 N. Second Street, Suite 300
St. Charles, IL 60174
Phone: 630-797-6333
mh@meyers-flowers.com

Allison Schmidt, Esq.
10777 West Twain Avenue, Suite 300
Las Vegas, NV 89135
Phone: 702-900-9040
allison@nevadaslawyers.com

*Counsel for Plaintiff Rickey Martin*

9